**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| GLADYS VALERIUS DE CORTES, an individual,<br><br>*Plaintiff,*<br><br>v.<br><br>BRICKELL INVESTMENT REALTY, LLC, a Florida limited liability company, DANIEL BURDAK, an individual, and TROY ALWINE, an individual,<br><br>*Defendants*. | CASE NO: |

**COMPLAINT**

Plaintiff Gladys Valerius de Cortes files this Complaint against Defendants Brickell Investment Realty, LLC, Daniel Burdak, and Troy Alwine.[1]

**INTRODUCTION**

1. Mrs. Valerius is 84 years old. After seventeen years as an assistant at the real estate company BIR, Mrs. Valerius accomplished her dream: She obtained her real estate license. Mrs. Valerius asked for the opportunity to work for BIR as a real estate agent. Defendants refused. Burdak told Mrs. Valerius that she was tired and needed to take a break from the business. She was heartbroken but sought to move on with her career.

2. BIR now insists that Mrs. Valerius is not allowed to sell real estate in Miami because of a **five-year non-compete agreement**. BIR has threatened Mrs. Valerius and her new employer with a lawsuit.

---

[1] Plaintiff Gladys Valerius de Cortes is "Mrs. Valerius" or "Plaintiff." Defendant Brickell Investment Realty, LLC, is "BIR." Defendant Daniel Burdak is "Burdak." Defendant Troy Alwine is "Alwine." BIR, Burdak, and Alwine are collectively "Defendants."

3. Florida has a non-compete problem. Anywhere else in America, the notion of an 84-year-old great-grandmother being subjected to a five-year non-compete agreement that would keep her out of a massive, multi-billion-dollar real estate market would be viewed with shock and disgust. But in Florida, rampant misuse and abuse of non-compete agreements is business as usual. Until the State of Florida or the United States of America outlaw corporate abuse of non-compete agreements, it is incumbent upon our courts to protect the rights of working people to simply earn a living.

4. Non-compete agreements are not simple contracts to be reflexively enforced. They are restraints of trade and are governed by antitrust law. The overwhelming majority of employee non-compete agreements in existence are overly broad, unreasonable, not necessary to protect any legitimate business interest, and therefore illegal and unenforceable. This case is no exception.

5. But the insult and injury do not stop there. As Defendants' assistant, Mrs. Valerius was on-call every night and weekend and regularly worked more than fifty (50) hours per week. Mrs. Valerius lived, and still lives, in the same building where BIR's office is located. She was in the office at a moment's notice anytime BIR deemed it necessary.

6. Mrs. Valerius was paid a salary of $570 per week as a W2 employee during this seventeen-year period. Defendants never paid Mrs. Valerius a single dollar of overtime.

7. This is an action for violations of the Fair Labor Standards Act ("FLSA"), a declaratory judgment holding the non-compete restrictions unenforceable, tortious interference with a business relationship, and defamation *per se*.

8. Mrs. Valerius also seeks punitive damages to the fullest extent of the law. This is necessary to put the Florida business community on notice: The citizens of Florida will not tolerate this type of corporate abuse of working people.

## PARTIES

9.     Mrs. Valerius is a Florida citizen residing in Miami-Dade County, Florida.

10.    BIR is a limited liability company organized and existing under the laws of the State of Florida that maintains its principal place of business at 905 Brickell Bay Drive, Tower 2, Lobby Suite #227, Miami, Florida 33131. BIR is an employer within the meaning of 29 U.S.C. § 203(d).

11.    At all times material, BIR was an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203. Mrs. Valerius' work for Defendants affected interstate commerce for the relevant time period because Defendants represent both in-state and out-of-state clients in negotiating the purchase or sale of property within the State of Florida in which Defendants are located, negotiate for the purchase or sale of property in other states, or collect or remit rents or other monies for property owners. Mrs. Valerius' work included communicating with Defendants' out-of-state clients and interstate financial institutions by telephone, e-mail, and fax. Additionally, upon information and belief, BIR grossed in excess of $500,000 per annum for the relevant time period.

12.    Burdak is the owner of BIR. As BIR's owner, Burdak had, at all times material, operational control over significant aspects of BIR's day-to-day functions, including compensation, scheduling, and supervision of employees. Burdak is an employer within the meaning of 29 U.S.C. § 203(d). Burdak is personally liable for the FLSA violations complained of herein.

13.    Alwine is a manager of BIR. As BIR's manager, Alwine had, at all times material, operational control over significant aspects of BIR's day-to-day functions, including compensation, scheduling, and supervision of employees. BIR publicly holds Alwine out as a

person authorized to act on behalf of the Company (as indicated in corporate filings with the Secretary of State). Alwine is an employer within the meaning of 29 U.S.C. § 203(d). Alwine is personally liable for the FLSA violations complained of herein.

14. At all times material, Defendants maintained control, oversight, and direction over Mrs. Valerius in her capacity as an employee of BIR, including, but not limited to, hiring and firing decisions, determining the rate of pay and work schedules, maintaining employment records, and otherwise controlling the terms and conditions of Mrs. Valerius' employment.

15. At all times material, Defendants had control over and the power to change compensation practices that harmed Mrs. Valerius and other individuals they employed.

**JURISDICTION AND VENUE**

16. This Court has federal question jurisdiction over Mrs. Valerius' FLSA claim pursuant to 28 U.S.C. § 1331.

17. This Court has supplemental jurisdiction over Mrs. Valerius' state law claims pursuant to 27 U.S.C. § 1367 because these claims are so closely related to Mrs. Valerius' claims under the FLSA that they form part of the same case or controversy under Article III of the United States Constitution.

18. This Court has personal jurisdiction over BIR because it is a Florida limited liability company with its principal place of business in Miami-Dade County and continuously conducts business in Miami-Dade County.

19. This Court has personal jurisdiction over Burdak because he is a Florida citizen residing in Miami-Dade County.

20. This Court has personal jurisdiction over Alwine because he is a Florida citizen residing in Miami-Dade County.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because BIR is subject to personal jurisdiction in this District and because the acts giving rise to the claims herein occurred in this District.

**GENERAL ALLEGATIONS**

A. **Real Estate Brokering and Sales in Miami-Dade County, Florida**

22. BIR competes in the real estate brokerage and sales industry. Real estate brokers and sales associates (collectively, "real estate agents") assist in the sale and purchase of real estate by individuals or entities.

23. In this industry, exclusivity is nearly non-existent. Once the real estate transaction is complete for the purchase or sale, the customer relationship ends.

24. A license search with the Florida Department of Business and Professional Regulation shows there are thousands—and likely tens of thousands—of real estate agents in Miami-Dade County. The real estate brokerage and sales industry is, simply put, a free for all.

B. **Mrs. Valerius' Role with BIR**

25. Mrs. Valerius' affiliation with Burdak began in 2003, when Burdak hired Mrs. Valerius as his assistant for his real estate brokerage and sales practice.

26. In or about June 2011, Burdak organized BIR under the laws of Florida.

27. In or about July 2011, Burdak added Alwine as a manager of BIR.

28. At BIR, Mrs. Valerius continued her role as Burdak's assistant and a BIR employee from 2011 until her termination of employment in 2020.

29. Until the termination of her employment, Mrs. Valerius was employed by Defendants within the meaning of 29 U.S.C. § 203(g).

30. All aspects of Mrs. Valerius' daily responsibilities were tightly managed by Defendants and the policies, procedures, and practices they enacted. For example, Mrs. Valerius was:

    a. required to work on a fixed schedule set by Defendants that she could not deviate from without prior approval;

    b. required to use company-provided forms, contracts, software, and other tools;

    c. required to follow company-prescribed procedures and instructions; and

    d. provided a desktop computer and a desk in the company office.

31. Mrs. Valerius was paid regular wages of $570 per week.

32. Mrs. Valerius' duties and responsibilities only included secretarial and customer-service tasks that required her physical presence in the office.

**C. Mrs. Valerius Worked Overtime Without Compensation**

33. Throughout Mrs. Valerius' employment with Defendants, she routinely worked more than 50 hours in a workweek.

34. For all seventeen years, Mrs. Valerius typically worked a seven-day workweek. Weekdays she worked hours beyond her eight-hour shifts into the nighttime, and on weekends, she would work several more hours.

35. As stated above, Mrs. Valerius' apartment was, and still is, located in the same building as BIR's office.

36. Defendants failed to pay Mrs. Valerius overtime wages for hours worked in excess of 40 hours in a workweek.

**D. Defendants Stifle Mrs. Valerius' Competition After Her Separation from BIR**

37.  In March 2020, at 83-years-old and after seventeen years as Defendants' assistant, Mrs. Valerius finally accomplished a longtime goal: She obtained a real estate broker and sales associate license issued by the Florida Department of Business and Professional Regulation (License # SL3467101).

38.  Mrs. Valerius asked Defendants whether she could place her license under BIR's umbrella and serve as one of BIR's real estate agents. Defendants refused.

39.  Mrs. Valerius was devastated by Defendants' refusal after her seventeen years of service to the Company.

40.  Defendants terminated Mrs. Valerius.

41.  She was compelled to follow her dream and placed her license under GGH Realty LLC ("GGH").

42.  Defendants then posted a notice on BIR's office door, in the building in which Mrs. Valerius lives, stating that Mrs. Valerius had retired. Defendants also sent emails and texts to clients that Mrs. Valerius retired.

43.  Defendants knew Mrs. Valerius had not retired and intended the posting, emails, and texts to damage Mrs. Valerius' future business as a real estate agent.

44.  When Mrs. Valerius confronted Burdak about the falsity of the door posting, emails, and texts, Burdak, individually and on behalf of BIR, responded by stating that Mrs. Valerius had signed a non-compete agreement four years earlier. *See* "Employee's Non-Competition with Employer" ("Agreement") attached hereto as Exhibit "A."

45.  Mrs. Valerius informed Burdak that she did not have a copy of the Agreement in her records and did not recall signing the Agreement.

46. Upon information and belief, on an unknown date in 2016, Burdak slipped the Agreement into a stack of papers for Mrs. Valerius to sign.

47. There was no reason for Mrs. Valerius to sign the Agreement because:

    a. As of September 1, 2016, the effective date stated in the Agreement, Mrs. Valerius had been employed by Defendants for thirteen years without any problems or incidents.

    b. There was also no additional incentive for Mrs. Valerius to sign the Agreement. Defendants did not inform Mrs. Valerius that her employment was contingent on signing the Agreement, and Defendants did not offer Mrs. Valerius an increase in salary or any type of benefit.

48. Instead of allowing Mrs. Valerius pursue her dream, Defendants threatened Mrs. Valerius and GGH with a lawsuit to stop Mrs. Valerius' lawful competition.

49. On February 16, 2021, BIR and Burdak sent cease and desist letters to Mrs. Valerius and GGH alleging Mrs. Valerius breached restrictive covenants in the Agreement. *See* February 16, 2021 Cease and Desist Letters, attached hereto as Composite Exhibit "B."

50. BIR and Burdak interfered with Mrs. Valerius' business relationship with GGH by:

    a. advising GGH that Mrs. Valerius is subject to enforceable restrictive covenants—which she is not—and that continued employment of Mrs. Valerius would implicate GGH in litigation against Mrs. Valerius; and

    b. threatening to sue GGH directly for a variety of claims for injunctive relief, damages, and attorneys' fees and costs.

51. In Mrs. Valerius' experience, the real estate brokerage and sales industry is an open market because exclusive relationships are extremely rare. Anyone willing to work hard could successfully enter the real estate market.

52. BIR provided no evidence that they possess any legitimate business interests to support the enforceability of the Agreement's restrictive covenants. None exists.

53. Defendants know the realities of their business: (1) There is no confidential information about real estate. (2) There are no exclusive real estate relationships exist due to one-off transactions. (3) They did not provide any extraordinary or specialized training to Mrs. Valerius. This precludes Defendants from having any legitimate business interest. Defendants sent the letters to Mrs. Valerius to bully her into giving up on her dream.

54. BIR and Burdak's subsequent conduct demonstrate that the cease & desist letters were sent in bad faith: In the cease-and-desist letters (written by BIR's counsel), the Company takes the position that Mrs. Valerius is subject to an outright non-compete restriction. But in correspondence directly between Burdak and GGH, Burdak admits that the only clients *potentially* at issue are 170 owners of units in the Four Ambassadors. But Mrs. Valerius lives in that same building and knows many of the residents and owners there.

55. Because of BIR and Burdak's conduct, Mrs. Valerius' ability to compete and make a living is in jeopardy. Mrs. Valerius' reputation as a real estate broker and sales associate has been undermined in the industry, and she has been unable to cultivate new clients due to concerns about litigation and intimidation by Defendants.

56. As an octogenarian, Mrs. Valerius must make a living to support herself as best and as long as she can until her eventual retirement.

### E. BIR's Restrictive Covenants are Unenforceable and Illegal

57. The restrictive covenants that BIR seeks to enforce against Mrs. Valerius are contained in Sections A.i.-iii of the Agreement. *See* Ex. A at §§ A.i.-iii.

58. These restrictive covenants do not act to protect any of BIR's legitimate business interests. They serve only to restrain trade by cutting a determined 84-year-old real estate agent from the Florida real estate market. They are unenforceable as a matter of law.

59. Further, the restrictive covenants' five-year restraint is presumptively unreasonable. Fla. Stat. § 542.335(1)(d).

#### 1. *BIR Lacks Protectable Confidential Information*

60. There is no confidential information at issue that constitutes a legitimate business interest.

61. Information about real estate is publicly available and can be learned through publicly available means such as the Internet.

62. The identity and pricing of real estate is neither confidential nor competition sensitive. Neither is the identity of the real estate owner. Real estate is located in plain view. The owner of property can be identified from public records.

63. Mrs. Valerius was never privy to any confidential information, let alone confidential information that rises to the level of a legitimate business interest.

#### 2. *BIR Lacks Protectable Relationships*

64. There are no substantial, protectable customer or other relationships at issue.

65. Protectable customer relationships only exist where the relationship is exclusive or near exclusive; long-term; customers cannot be easily identified and solicited by other competitors; and there is a reasonable expectation of continued future business.

66. BIR rarely—if ever—has an exclusive or near exclusive relationship with a real estate owner over a long-period of time. Most transactions are one-off.

### 3. *BIR Did Not Supply Mrs. Valerius with Extraordinary Training*

67. Defendants did not supply Mrs. Valerius with any training, let alone training that could be considered specialized or extraordinary.

### COUNT I — VIOLATION OF THE FAIR LABOR STANDARDS ACT
*(Against All Defendants)*

68. Plaintiff repeats and realleges Paragraphs 1-7, 9-16, and 18-36 as if fully set forth herein.

69. Plaintiff regularly worked for Defendants in excess of forty (40) hours a week.

70. During her employment, Plaintiff never qualified as an executive, administrative, or outside sales employee, or any other kind of employee exempt from overtime regulations under 29 C.F.R. Part 541 § 13. For example:

    a. Plaintiff's job duties included providing secretarial and customer services at Defendants' business office.

    b. Plaintiff's job duties required her physical presence at Defendants' business office for the majority of her hours worked.

    c. Plaintiff was never compensated by Defendants on a salary basis at a rate equal to or in excess of $684 per week.

    d. Plaintiff never customarily and regularly directed the work of two or more other full-time employees or their equivalent.

71. Plaintiff's work for Defendants affected interstate commerce for the relevant time period because Defendants represented both in-state and out-of-state clients in negotiating the purchase or sale of property within the State of Florida in which Defendants are located, negotiate for the purchase or sale of property in other states, or collect or remit rents or other monies for property owners.

72. Defendants grossed in excess of $500,000 per annum for the relevant time period.

73. At all times material, Defendants maintained control, oversight, and direction over Plaintiff in her capacity as Defendants' employee, including, but not limited to, hiring and firing decisions, determining her rate of pay and work schedule, maintaining employment records, and otherwise controlling the terms and conditions of Plaintiff's employment.

74. At all times material, Defendants had control over and power to change compensation practices that harmed Plaintiff and other individuals Defendants employed.

75. Defendants failed to make, keep, and preserve accurate records with respect to Plaintiff's hours worked each workday and total hours worked each workweek, as required by 29 U.S.C. § 211(c) and supporting federal regulations.

76. The FLSA, pursuant to 29 U.S.C. § 207, requires covered employers, such as Defendants, to compensate all non-exempt employees, such as Plaintiff, at a rate not less than one-and-one-half times their regular rate of pay for work performed in excess of forty (40) hours per workweek.

77. Defendants failed to pay Plaintiff overtime wages for hours worked over forty (40) hours a workweek. As such, Plaintiff is entitled to overtime compensation at one-and-one-half times his regular rate of pay for all work performed in excess of forty (40) hours per workweek.

78. Defendants' unlawful conduct was willful and intentional. Defendants were aware or disregarded the possibility that its practices with regard to Plaintiff's compensation violated the FLSA.

79. Due to Defendants' intentional, willful, and unlawful acts, Plaintiff was deprived of overtime compensation in amounts to be determined at trial, and she is entitled to recovery of

these amounts, liquidated damages, and attorney's fees pursuant to the FLSA, each in an amount to be proven at trial.

### COUNT II — DECLARATORY JUDGMENT THAT THE RESTRICTIVE COVENANTS ARE UNENFORCEABLE UNDER FLA. STAT. § 542.335
*(Against BIR)*

80. Plaintiff repeats and realleges Paragraphs 1-7, 9-11, 17, 18, and 21-67 as if fully set forth herein.

81. BIR maintains that the Agreement's restrictive covenants are enforceable.

82. A dispute exists between Plaintiff and BIR regarding the enforceability of the Agreement's restrictive covenants.

83. There exists an actual controversy that flows from BIR's assertion that Plaintiff is bound by the Agreement's restrictive covenants such that her current employment as a real estate agent and her fair competition with BIR is in jeopardy.

84. Plaintiff and BIR's legal rights, powers, and duties depend upon a declaration by this Court.

85. All parties with any interest in the declaration sought are before this Court and will have an opportunity to respond.

86. Neither the controversy nor the facts upon which it is based are hypothetical. The parties have a concrete controversy that is susceptible to conclusive judicial determination because a declaration regarding the enforceability of the Agreement's restrictive covenants would immediately clarify the parties' respective rights, powers, and duties.

87. Plaintiff has suffered injury and is threatened with further injury because of BIR's misrepresentations, and threats of litigation based on misrepresentations, that Plaintiff is bound by

the Agreement's restrictive covenants which prohibit her lawful employment and competition with BIR as a real estate agent in Miami-Dade County, Florida.

88. The Agreement's restrictive covenants constitute unlawful restraints of trade under Florida Statutes § 542.335 because they are neither supported by nor necessary to protect any legitimate business interests. Specifically:

   a. Plaintiff did not have access to and was not exposed to any confidential or proprietary business information or trade secret that was unique to BIR and that could be used to engage in unfair competition;
   b. No customer relationships potentially at issue are substantial or protectable;
   c. Plaintiff did not receive any specialized or extraordinary training from BIR; and
   d. There are no other legitimate business interests that could justify enforcement of the Agreement's restrictive covenants against Plaintiff.

89. As written, the Agreement's restrictive covenants merely serve to prevent competition *per se*, rendering them violative of Florida Statutes § 542.335 and unenforceable as a matter of law.

90. Further, BIR's willful and intentional violation of federal overtime law provides an entirely separate basis upon which to invalidate the at issue non-compete agreement.

91. Accordingly, Plaintiff seeks a declaration that the Agreement's restrictive covenants are void, unlawful, and unenforceable as written. Plaintiff further seeks a declaration that the only enforceable restriction against her – if any – is a limited non-solicitation restriction with respect to only specific, identifiable customers with whom BIR can establish the existence of a substantial, protectable customer relationship under Florida law.

## COUNT III — TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
*(Against BIR and Burdak)*

92. Plaintiff repeats and realleges Paragraphs 1-11, 17-19, 21-28, 30-32, and 37-67 as if fully set forth herein.

93. Plaintiff has a business relationship with GGH whereby Plaintiff places her real estate broker and sales associate license under GGH's umbrella.

94. BIR and Burdak became aware of the business relationship between Plaintiff and GGH and immediately acted to interfere with this relationship.

95. Specifically, BIR and Burdak agreed to send letters to Plaintiff and GGH representing that Plaintiff could not have a business relationship with GGH because Plaintiff had signed the Agreement and was subject to valid, enforceable restrictive covenants. Comp. Ex. B.

96. BIR and Burdak further agreed to threaten GGH with litigation over the Agreements unless GGH ended its business relationship with Plaintiff.

97. Further, Burdak, individually and on behalf of BIR, directly spoke to GGH's president and accused Plaintiff with repeatedly violating the Agreement. Budak's comments were designed to have Plaintiff fired from GGH.

98. BIR and Burdak's conduct is tortious because, even if Plaintiff signed the Agreement, Plaintiff's signature on the agreement was unlawfully obtained by Burdak slipping the Agreement within a stack of papers so Plaintiff would unknowingly sign the Agreement.

99. Aside from this, BIR and Burdak's conduct is tortious because, even if Plaintiff signed the Agreement, the Agreement's restrictive covenants are illegal restraints of trade.

100. BIR and Burdak's actions toward Plaintiff's business relationship with GGH were intentional, unjustifiable, and not privileged.

101. As a result of BIR and Burdak's tortious conduct, Plaintiff has been damaged through loss of wages and commissions through business opportunities with GGH, and the emotional toll of not being able to fully utilize her real estate broker and sales associate license during the midst of a pandemic and economic crisis.

## COUNT IV — DEFAMATION *PER SE*
*(Against BIR and Burdak)*

102. Plaintiff repeats and realleges Paragraphs 1-10, 12, 17-19, 21-28, 30, 31, and 37-67 as if fully set forth herein.

103. BIR and Burdak represented to, at a minimum, GGH that Plaintiff had signed the Agreement and was subject to legally enforceable restrictive covenants that operated to prevent Plaintiff from being employed and working for GGH. *See* Comp. Ex. B.

104. BIR and Burdak's assertions that Plaintiff is prohibited to work for GGH due to such restrictive covenants are blatantly and demonstrably false.

105. Burdak, individually and on behalf of BIR, also reached out to GGH and claimed that Plaintiff had resigned her position from BIR. Again, this is blatantly and demonstrably false.

106. BIR and Burdak also accused Plaintiff of using BIR's allegedly confidential information in and repeatedly violating the Agreement. Again, this is blatantly and demonstrably false.

107. BIR and Burdak's assertions naturally imply that Plaintiff is the type of person who violates enforceable contractual obligations.

108. Such assertions implicate and disparage Plaintiff's business reputation.

109. BIR and Burdak's libelous writings and slanderous statements are defamation *per se* because, when considered alone, they tend to subject Plaintiff to distrust, ridicule, contempt, and disgrace, and are injurious to Plaintiff's trade and professional reputation.

110. BIR and Burdak knew or should have known that the statements about Plaintiff would cause severe damage to her reputation, business opportunities, social relationships, and career.

111. BIR and Burdak made the false and defamatory statements with actual malice because BIR and Burdak either knew of the statements' falsity or made the statements with reckless disregard of their truth or falsity.

112. In making the defamatory statements, BIR and Burdak acted intentionally, maliciously, willfully, and with the intent to injure Plaintiff.

113. Plaintiff has been harmed by the loss of the economic value in goodwill and reputation that she has built throughout her career, and particularly during her time working in the Miami-Dade County real estate community.

## PRAYER FOR RELIEF

**WHEREFORE**, the following relief is requested from the Court:

a. A declaratory judgment holding the Agreement's restrictive covenants, as written, are unlawful, void, and unenforceable pursuant to Florida Statutes § 542.335;

b. A declaratory judgment stating the reformed scope of any restrictive covenants by which Mrs. Valerius remains bound or stating that Mrs. Valerius is subject to no such restrictions;

c. Damages in an amount to be determined for all of Mrs. Valerius' unpaid wages as a result of Defendants' violations of the FLSA;

d. Liquidated damages in an amount equal to Mrs. Valerius' unpaid wages as a result of Defendants' violations of the FLSA;

e. Compensatory damages suffered by Mrs. Valerius as a result of BIR and Burdak's tortious interference;

f. Special damages, including damages for emotional distress, flowing from BIR and Burdak's tortious interference;

g. Punitive damages to punish BIR and Burdak's tortious interference;

h. Compensatory damages suffered by Mrs. Valerius resulting from BIR and Burdak's defamation;

i. Presumed damages flowing from BIR and Burdak's defamation;

j. Punitive damages to punish BIR and Burdak's defamation;

k. Reasonable attorneys' fees, costs, and expenses incurred by Mrs. Valerius in this litigation pursuant to 29 U.S.C. § 216(b).

l. Reasonable attorneys' fees, costs, and expenses incurred by Mrs. Valerius in this litigation pursuant to Florida Statutes § 542.335(1)(k).

m. Pre-judgment and post-judgment interest; and

n. Such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims.

Dated: March 23, 2021

Respectfully submitted,

By: /s/ *Christopher S. Prater*
Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com

Christopher S. Prater
Florida Bar No.: 105488
cprater@pollardllc.com

Joshua A. Rieger
Florida Bar No.: 1011092
jrieger@pollardllc.com

**Pollard PLLC**
100 SE 3rd Ave., Ste. #601

Fort Lauderdale, FL 33394
Telephone: 954-332-2380
Facsimile: 866-594-5731
*Attorneys for Plaintiff*